Filed 2/18/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TERRY D. BEMORE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br><br>THE PEOPLE et al.,<br><br>    Real Parties in Interest. | D084579<br><br>(San Diego County<br>Super. Ct. Nos. CR84617, HC26799) |

ORIGINAL PROCEEDING on petition for writ of mandate.  Polly Shamoon, Judge.  Relief granted and remanded with instructions.

Pamala Sayasane; and Cheryl J. Cotterill for Petitioner.

Avram Frey for ACLU Foundation of Northern California; and Efaon Cobb for ACLU Foundation of San Diego and Imperial Counties, as Amici Curiae on behalf of Petitioner.

Susanne C. Koski for Respondent.

Summer Stephan, District Attorney, Linh Lam, Valerie Ryan and Martin E. Doyle, Deputy District Attorneys, for Real Party in Interest The People of the State of California.

Jo E. Super, Chief Deputy Public Defender, and Jeremy Kennedy Thornton, Deputy Public Defender, for Real Party in Interest San Diego County Office of the Primary Public Defender.

INTRODUCTION

Twenty-six years after Terry D. Bemore was sentenced to death for the 1985 torture- and robbery-murder of a store clerk, the Ninth Circuit Court of Appeals granted his petition for writ of habeas corpus and ordered the death judgment reversed. The court concluded Bemore had not received effective assistance of counsel because his trial counsel's performance was "professionally unacceptable," going so far as to find that lead counsel "essentially abdicated his role as a lawyer." (*Bemore v. Chappell* (2015) 788 F.3d 1151, 1163, 1165.) Although not an independent basis for the Ninth Circuit's reversal of the death judgment in 2015, Bemore, who is Black, produced evidence that his lead counsel engaged in racist conduct that affected his ability to adequately defend Bemore at trial. As a result of the extensive work by Bemore's habeas counsel—including a collective 18 years of service from Pamela Sayasane and Cheryl Cotterill—Bemore was resentenced to life without parole in 2016.

Four years later, in 2020, the California Legislature enacted the Racial Justice Act (RJA) (Stats. 2020, ch. 317, § 1), providing statutory authority for defendants to bring a petition for writ of habeas corpus to challenge criminal proceedings infected by racial, ethnic, or national origin discrimination. In 2022, the Legislature amended the RJA to apply retroactively, starting

2

January 1, 2024, to all cases in which a person with an RJA claim is "currently serving a sentence in the state prison." (Pen. Code,[1] § 745, subd. (j)(3); Stats. 2022, ch. 739, § 2.) This created a new avenue for Bemore to challenge his convictions on the specific basis of his lead counsel's assertedly racist conduct. The Legislature also amended section 1473, subdivision (e) (section 1473(e)), to require trial courts to appoint habeas counsel upon request "if the petitioner cannot afford counsel," and "either the petition alleges facts that would establish a violation of [the RJA] or the State Public Defender requests counsel be appointed."

With the potential for further relief from the alleged racism that may have tainted Bemore's trial, Sayasane and Cotterrill conducted eight months of additional investigation to prepare another petition for writ of habeas corpus on his behalf under the RJA. Unsurprisingly, Bemore requested the trial court appoint Sayasane and Cotterill to represent him in this additional effort. The court granted Bemore's motion for appointment of habeas counsel but, without notice or a hearing, it denied his request to select Sayasane and Cotterill to represent him. Instead, it appointed the San Diego Office of the Primary Public Defender (Public Defender) based on the provisions of section 987.2.

Bemore, through Sayasane and Cotterill, then filed the instant petition for writ of mandate, asking us to direct the trial court to vacate its order appointing the Public Defender and grant his request to select Sayasane and/or Cotterill. Bemore asserts he was entitled to have Sayasane and Cotterill appointed as private counsel to represent him pursuant to new statutory provisions enacted by the RJA. We issued an order directing the

---

[1] Further undesignated statutory references are to the Penal Code.

3

San Diego Superior Court (Superior Court) to show cause and directed the parties to address two questions: (1) whether section 987.2 is the exclusive path to appointment of counsel on postconviction RJA claims and (2) whether the Public Defender can be considered "available" for purposes of section 987.2 given the estimated one to two years it would need to come up to speed on Bemore's RJA claim. The Superior Court filed a return answering our first question in the affirmative. But, in what we view as a problematic move, the Public Defender intervened and filed a return as *a real party in interest*, opposing the petition of Bemore, its client. Complicating matters further, the same deputy public defender who appeared on behalf of the Public Defender in this writ proceeding is also assigned to represent Bemore on his RJA claim.

We now grant Bemore's petition and the relief he requests. We hold as a matter of first impression that the RJA did not change the procedures currently in place for selecting and assigning counsel to represent indigent litigants in noncapital cases in the superior court. Section 987.2 continues to govern the selection of counsel to represent petitioners in postconviction habeas proceedings, including those that raise RJA claims. The provisions of section 987.2 do not give Bemore a right to have counsel of his choice selected to represent him; appointment of the Public Defender is given priority. (§ 987.2.)

We next consider whether the trial court erred when it denied Bemore's request for Sayasane and Cotterill to be selected to represent him. Section 987.2, subdivision (e) (section 987.2(e)), empowers trial courts to appoint private counsel, like Sayasane and Cotterill, upon a finding of "good cause" if the Public Defender is "unavailable." But here the court erred when it placed the burden of demonstrating the Public Defender's unavailability on Bemore.

4

It was the court's duty to assess whether the Public Defender was available to prosecute Bemore's RJA claim in a suitably prompt manner, not Bemore's. (*Harris v. Superior Court* (1977) 19 Cal.3d 786, 795 (*Harris*).) The court also erred, given the exceptional history of Sayasane's and Cotterill's prior representation of Bemore, when it ruled that Bemore did not establish "good cause" for their selection under section 987.2 in the event the Public Defender was unavailable. (*Harris*, at p. 793.)

Ordinarily, we would reverse and remand with directions to the trial court to assess in the first instance whether the Public Defender is available to represent Bemore, and if not, to appoint Sayasane and/or Cotterill. But after careful consideration we have determined that further proceedings are unnecessary because the Public Defender is disqualified from representing Bemore. By intervening as a real party in interest and asserting a position diametrically adverse to Bemore while maintaining he was a client, the Public Defender has breached its duty of loyalty. Consequently, the Public Defender is "unavailable" for appointment within the meaning of section 987.2. We therefore grant Bemore's petition, vacate the trial court's order appointing the Public Defender as habeas counsel, and direct the trial court to appoint one or both of Bemore's requested attorneys.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I.

*Trial and Judgment*

In 1985, Bemore and Keith Cosby were arrested for the murder of a liquor store clerk found dead late at night on the storage room floor. The clerk had been stabbed 37 times while bound, and the store's safe was gone. Each were charged with one count of first degree murder (§ 187), one count of robbery (§ 211), and one count of burglary (§ 459), along with two special circumstance allegations that the murder was committed during a robbery and involved the infliction of torture (§ 190.2, subd. (a)(17)(A) and (a)(18), respectively).

The men were tried separately before different juries. Cosby was tried first, for the killing of the clerk and for another, unrelated murder. His jury convicted him of both crimes but, as to the clerk's murder, it did not unanimously find true the special circumstances of torture and murder in the commission of a robbery. Cosby was sentenced to 25 years to life for the clerk's murder.

Bemore was tried next. He was represented by appointed counsel, C. Logan McKechnie and Elizabeth Barranco. Bemore's jury convicted him of

---

[2] Our recitation of the background facts is taken from the California Supreme Court's decision affirming the death judgment in the automatic appeal in *People v. Bemore* (2000) 22 Cal.4th 809; the United States District Court's decision denying habeas relief on all claims in *Bemore v. Chappell* (S.D. Cal., Sept. 20, 2012, No. 08cv0311 LAB (WVG)) 2012 WL 4338799; and the Ninth Circuit Court of Appeal's decision reversing in part the District Court's denial of habeas relief and overturning the death judgment in *Bemore v. Chappell, supra*, 788 F.3d 1151. These decisions were cited or referenced by Bemore in his underlying motion for appointment of RJA counsel before the trial court, as well as in his petition for writ of mandate in this court.

first degree murder, robbery, and burglary and found true the special circumstances of torture and murder in the commission of a robbery. Following a penalty phase, the same jury returned a death verdict. The trial court denied the automatic motion to modify the death verdict and sentenced Bemore to death in 1989. The California Supreme Court affirmed Bemore's convictions and sentence in 2000. (*People v. Bemore, supra*, 22 Cal.4th 809.)

## II.

### *Habeas Petition in the California Supreme Court*

Bemore filed a petition for writ of habeas corpus directly with the California Supreme Court in 2000. The Court had appointed Robert R. Bryan in 1998 to represent Bemore as postconviction counsel in state court. Sayasane assisted Bryan in the investigation and preparation of the habeas petition, serving as "co-counsel" and "second chair." In total, Sayasane represented Bemore for more than six years, from approximately 1997 to 2003,[3] in the state habeas proceedings.

In his state habeas petition, Bemore asserted his convictions and death judgment should be overturned for several reasons relating to his representation by lead trial counsel, McKechnie. As detailed in his motion for appointment of RJA counsel, the petition alleged McKechnie "(1) was ineffective, (2) labored under a conflict of interest, (3) committed billing fraud by misappropriating funds meant for the case investigation to support his

---

[3] Sayasane explained, in Bemore's verified mandate petition, that she made a typographical error in her declaration filed in the trial court, which "erroneously state[d] the period as 1999-2003." Our analysis does not depend on whether the trial court was aware that Sayasane began representing Bemore in 1997 as opposed to 1999. In the interest of accuracy, we accept the correction for purposes of this opinion.

7

gambling habit, and accordingly, (4) did not adequately investigate and prepare his client's case for trial." Bemore supported his allegations with a declaration by Barranco, his second trial counsel who led the penalty phase of his trial.

Bemore alleged in these earlier proceedings that McKechnie was racist against Bemore and that his racism created a "prejudicial conflict of interest." Barranco averred in her declaration that McKechnie and his private investigator were "prejudiced against black people." Barranco, who was 26 years old and had only been in practice for two years at the time of Bemore's trial, admitted her lack of experience harmed Bemore because it "caused [her] to tolerate behaviors that [she] no longer find[s] acceptable." Specifically, she averred that, right before Bemore was to take the stand and testify, McKechnie whispered to him, " 'Just don't act like a nigger,' or words to that effect." Barranco did not personally hear McKechnie make this statement but Bemore "found [the] statement unnerving enough to tell [her] about it later." In Barranco's opinion, McKechnie's statement "affected the way [Bemore] testified."

Barranco believed McKechnie's racism and the racism of his private investigator also affected their investigation and defense of Bemore's case. She remembered McKechnie and the investigator "making racial jokes about an[other] investigator . . . who is African-American." And "[o]n the times when [they] traveled to [Bemore's] boyhood neighborhood in South Central Los Angeles, [McKechnie's investigator] would frequently irritate [her] with the racist comments he made about the people [they] would see walking down the street." She averred: "In my opinion [McKechnie's and his investigator's] feelings toward black people prevented them from investigating prosecution

8

witnesses who were African American because they did not want to be around them."

Seven years after he filed his habeas petition, the California Supreme Court summarily denied all of Bemore's claims on the merits without an evidentiary hearing. (*In re Bemore* (Oct. 17, 2007, No. S089272) [2007 Cal.LEXIS 11938].)

### III.

### *Federal Habeas Petition*

Bemore proceeded to federal court where the district court for the Southern District of California appointed Bryan as lead postconviction counsel. Bryan filed a petition for writ of habeas corpus in the district court on Bemore's behalf in 2009. In 2012, the district court denied relief without holding an evidentiary hearing. (*Bemore v. Chappell*, *supra*, 2012 WL 4338799.) Bemore then appealed to the Ninth Circuit Court of Appeals. (*Bemore v. Chappell*, *supra*, 788 F.3d 1151.)

Cotterill was appointed along with Bryan to represent Bemore in the federal habeas proceedings as "Associate Counsel" in district court as well as on appeal to the Ninth Circuit. (See 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A; 18 U.S.C. § 3599(a)(2), (d) [providing for appointment of more than one attorney in federal habeas proceedings in death penalty cases].) Along with Bryan, Cotterill presented oral argument on Bemore's behalf in his case before the Ninth Circuit.

In 2015, the Ninth Circuit issued an opinion in which it addressed Bemore's claims that McKechnie rendered ineffective assistance at the guilt phase "by (1) presenting an 'unprepared, uncorroborated, and uninvestigated' alibi defense, and (2) failing to investigate and present evidence of mental impairment that could have negated Bemore's culpability." (*Bemore v.*

9

*Chappell*, *supra*, 788 F.3d at p. 1162.) As to both claims, the court concluded "McKechnie's investigation of defenses . . . was so deficient as to fail the[ ] forgiving standards" of determining whether an attorney's performance fell below prevailing professional norms. (*Id.* at p. 1163.)

First, Bemore had presented a "novel alibi" defense, claiming he did not commit the murder because he was committing another robbery in another location. (*Bemore v. Chappell, supra,* 788 F.3d at pp. 1157, 1163.) But, as the Ninth Circuit explained, "[t]he extent of McKechnie's investigation was, apparently, reviewing police reports of the [other] robbery and cross-examining at the preliminary hearing three eyewitnesses to that crime. McKechnie did not take steps to investigate the plausibility of the alibi by researching the timeline and geography to which Bemore planned to testify. He did not interview the eyewitnesses at all after the preliminary hearing, even though the trial was three years later." (*Id.* at p. 1163, fn. omitted.) "Yet," the court observed, "Bemore's alibi was the entire defense." (*Ibid.*) But "[b]ecause he expended such minimal effort, McKechnie did not learn of several critical flaws in the alibi presented." (*Ibid.*)

Compounding the lack of investigation was a lack of preparation for presentation of the defense at trial. The Ninth Circuit explained, "the first and only time McKechnie met with Bemore to prepare the alibi testimony was the night before Bemore was to take the stand." (*Bemore v. Chappell*, *supra*, 788 F.3d at p. 1163.) As a result of the lack of preparation, the court found "Bemore was so unprepared that he could not supply basic facts about the crime, forgot his own direct testimony on cross, and testified to details easily disproved by [an] investigator['s]. . . rebuttal testimony." (*Ibid.*) The court specifically noted that "McKechnie not only failed to prepare Bemore to testify, according to Barranco, but also rattled [him] just before he took the

10

stand by leaning over and whispering, ' "Just don't act like a nigger" or words to that effect.' " (*Id.* at p. 1163, fn. 11.) On these facts, the court found McKechnie's investigation of the alibi defense to have been "professionally unacceptable." (*Id.* at p. 1163.)

Second, the Ninth Circuit determined McKechnie's failure to investigate a potentially viable mental health defense to have been " 'below an objective standard of reasonableness.' " (*Bemore v. Chappell*, *supra*, 788 F.3d at p. 1169; *id.* at p. 1165.) The court explained, "[m]edical expert reports and statements by Bemore's family and friends, all known or readily available to McKechnie at the time, evinced a possibility that Bemore was so mentally impaired as to be unable to form the requisite intent to commit the crimes." (*Id.* at p. 1165.) In addition to other copious evidence of mental impairment, a forensic psychologist, "hired by co-counsel Barranco to conduct an investigation for the penalty phase, issued an eighteen-page report a year before the trial began indicating that Bemore suffered from, among other mental defects, organic brain impairment and a 'fundamental inability to control his behavior.' There was a possibility that Bemore had some form of mental illness, including bipolar disorder. According to . . . a psychiatrist hired by habeas counsel, bipolar disorder causes manic phases in which the individual 'will become . . . impulsive, have lapses in judgment, and can even become psychotic.' Intermittent explosive disorder, another of the possibilities [the psychiatrist] mentioned, causes episodes that 'often resemble epileptic seizures' in which 'the individual [may] engage in sudden violence and then have no memory of his actions when the episode ends.' " (*Id.* at pp. 1165–1166, fn. omitted; *id.* at p. 1159.) The court found the failure to investigate this additional potential defense fell " 'below an objective standard of reasonableness' " as well. (*Id.* at p. 1169.)

The Ninth Circuit concluded that "McKechnie essentially abdicated his role as a lawyer in developing the principal defense," but it nevertheless affirmed the district court's denial of Bemore's ineffective assistance of counsel claim with respect to the murder conviction for lack of prejudice. (*Bemore v. Chappell*, *supra*, 788 F.3d at pp. 1165, 1169.)

The Ninth Circuit also concluded the representation Bemore received by Barranco at the penalty phase was " 'outside the wide range of professionally competent assistance.' " (*Bemore v. Chappell*, *supra*, 788 F.3d at p. 1171.) The court found Barranco failed to conduct an adequate investigation of Bemore's mental health problems for use during the penalty phase of the trial (*id*. at pp. 1171–1172), and that the "available mitigating mental health evidence was compelling" for purposes of deciding whether to impose the death penalty (*id*. at p. 1174). Because the court was persuaded counsel's errors were so serious as to deprive Bemore of a fair trial in the penalty phase, it reversed the death judgment. (*Id*. at p. 1177.) The court remanded with instructions to the district court "to grant the petition for a writ of habeas corpus with respect to the penalty phase and return the case to the state court to reduce Bemore's sentence to life without parole, unless the State of California elects to pursue a new capital sentencing proceeding within a reasonable amount of time as determined by the district court." (*Ibid*.)

In 2016, after the United States Supreme Court denied petitions for certiorari by both Bemore and the Attorney General, the trial court sentenced Bemore to life without parole. He is currently serving his sentence at the California Medical Facility in Vacaville, California.

Cotterill represented Bemore throughout these federal habeas proceedings for more than 12 years, from approximately 2011 to 2023. With

12

Sayasane's six years of work prosecuting his state habeas claims, Cotterill and Sayasane served as Bemore's postconviction habeas counsel for a total of 18 years.

IV.

*Motion for Appointment of RJA Counsel*

In 2020, four years after Bemore was resentenced to life without parole, the California Legislature enacted the RJA " 'to eliminate racial bias from California's criminal justice system' and 'to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing.' " (*People v. Wilson* (2024) 16 Cal.5th 874, 944–945 (*Wilson*).) Among other grounds, the RJA is violated when an attorney in the defendant's case "used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful."[4] (§ 745, subd. (a)(2).)

Bemore did not become eligible to assert an RJA claim until January 1, 2024, when the Legislature's 2022 amendment to section 745 became effective and the RJA applied retroactively to all cases in which a person with

---

[4] The central provision of the RJA—section 745, subdivision (a)— "provides that a defendant may establish a violation of the Act by proving by a preponderance of the evidence that one of the following occurred: '(1) The judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited [racial] bias or animus towards the defendant'; or '(2) During the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language . . . or otherwise exhibited [racial] bias or animus towards the defendant . . . , whether or not purposeful.' (§ 745, subd. (a)(1), (2).) Alternatively, defendants may establish a violation of the Act by showing, by a preponderance of the evidence, that they were charged or convicted of a more serious offense than defendants of other races who are similarly situated, or that they received a longer or more severe sentence by nature of their race, or the race of their victim. (*Id.*, subd. (a)(3), (4).)" (*Wilson, supra,* 16 Cal.5th at p. 945.)

14

an RJA claim is "currently serving a sentence in the state prison." (§ 745, subd. (j)(3); Stats. 2022, ch. 739, § 2; see *Wilson*, *supra*, 16 Cal.5th at p. 946.) Relevant here, the RJA requires courts to appoint habeas counsel upon request "if the petitioner cannot afford counsel," and "either the petition alleges facts that would establish a violation of subdivision (a) of [s]ection 745 or the State Public Defender requests counsel be appointed." (§ 1473(e).)

Bemore's case was identified by the University of San Francisco School of Law Racial Justice Clinic (USF-RJC) and the San Francisco California Appellate Project (CAP-SF) as one with a potential RJA claim. In 2023, CAP-SF approached Sayasane about representing Bemore in this effort. After consulting with each other, Sayasane and Cotterill began working together on another petition for writ of habeas corpus on Bemore's behalf, conducting additional investigation for eight months.

On March 22, 2024, Bemore filed a motion seeking the appointment of Sayasane and Cotterill as habeas counsel pursuant to the RJA, and requested for the appointment order to issue nunc pro tunc to the date Sayasane and Cotterill began work on Bemore's RJA claim. In his motion, Bemore took the position that section 1473(e) is the controlling statute in noncapital cases for the appointment and selection of RJA habeas counsel, not section 987.2.

Bemore supported the motion for appointment with citations to the decisions arising from his postconviction habeas proceedings in California and federal court (see fn. 2, *ante*), as well as declarations by Sayasane and Cotterill that described their lengthy representation of Bemore. They each averred they had completed the specialized training required by section 1473.1 to qualify for appointment. They asserted it was in Bemore's best interest and the interest of judicial economy to appoint them because of their

familiarity with the extensive capital trial record, consisting of 44 volumes of reporter's transcripts and 11 volumes of clerk's transcripts.

Bemore attached Barranco's declaration that had been used to support his state and federal habeas petitions, and summarized her statements made in those proceedings. He also described new evidence of McKechnie's racism and attached a sworn declaration from McKechnie himself. McKechnie admitted he did in fact tell Bemore right before he testified, " 'Don't get up there and act like a fucking nigger,' " and he did this because he believed Bemore "was putting on a ghetto impression for the jury because he was nervous to testify."

Bemore also provided a sworn declaration from Gabby Sergi, a USF assistant professor and supervising attorney, who was present during McKechnie's interview. McKechnie told the USF-RJC attorneys that Bemore was " 'shucking and jiving' " at defense counsel's table before he testified. In a follow up call, McKechnie requested the attorneys remove that quotation from his declaration " 'because that's too racist' " and replace it with, Bemore was " 'hyper and using street slang.' "

By letters dated March 29 and April 23, 2024, the trial court notified Bemore, Sayasane and Cotterill that it would deem the motion for appointment of counsel to be a petition for writ of habeas corpus. Then, on June 3, without notice or conducting a hearing, the court granted Bemore's motion for appointment of counsel but denied his request to select Sayasane and Cotterill to represent him. It appointed the Public Defender instead.

In a written order, the trial court explained it selected the Public Defender instead of Sayasane or Cotterill based on the provisions of section 987.2, not section 1473(e) as advocated by Bemore. In counties with a public defender system, like San Diego, section 987.2(e) generally requires the

superior court to give priority to the primary public defender when selecting counsel for postconviction court appointment. Relying on *Charlton v. Superior Court* (1979) 93 Cal.App.3d 858, 860–864 (*Charlton*), which applies section 987.2 to postconviction habeas proceedings, the court explained that "in order for an indigent defendant to receive appointment of a private attorney of his choosing, the court must first make findings that the Public Defender, due either to conflict, or other good cause, is unavailable to take on the appointment."

Applying section 987.2(e), the trial court selected the Public Defender for two reasons. First, it placed the burden of demonstrating the Public Defender's unavailability on Bemore and found he failed to adduce sufficient evidence in his motion to make the required showing. Second, the court found that Sayasane and Cotterill's prior representation of Bemore did not establish "good cause" within the meaning of section 987.2(e) to select them instead of the Public Defender or any other entity in San Diego's indigent criminal defense system if the Public Defender was unavailable.

The trial court explained its reasoning as follows: "Petitioner's request for appointment nunc pro tunc, or otherwise, and for essential funds is denied. While the court is sympathetic to the situation and appreciates the time and effort that has been expended in [Bemore's] case, the court also recognizes that such is the nature of pro bono work and why, practically, pro bono work is so highly regarded in our legal system. However, in legal as opposed to practical terms, the fact counsel has willingly entrenched themselves in this case does not strike this court as good cause to find that the Public Defender, or any other entity which the court would be required, pursuant to [section] 987.2, to appoint are unavailable to take on the representation. Additionally, [Bemore] does not set forth sufficient evidence

17

for a good cause finding to show that the . . . Public Defender is unavailable to take on the appointment."

As noted, the trial court treated Bemore's motion as a petition for writ of habeas corpus. The court found that Bemore "alleged sufficient facts that would establish a violation of section 745, subdivision (a)," namely that McKechnie referenced his race "in a derogatory manner" and " 'exhibited bias or animus towards [him] because of [his] race, ethnicity, or national origin.' " Based on these allegations, which the court "accept[ed]" as true, the court found that Bemore satisfied his initial evidentiary burden to make a "prima facie showing of entitlement to relief" under the RJA and ordered the People "to show cause why relief under the [RJA] should not be granted."

The trial court appointed the Public Defender "to represent [Bemore] at all stages of the briefing and hearing process." The court set a briefing schedule that gave the Public Defender "60 days from service of [the order] to supplement or amend [Bemore's] original [p]etition." The court addressed the possibility the Public Defender might be unable to accept the appointment as follows: "If the Public Defender has a conflict, it shall notify this court and the San Diego District Attorney in writing within 10 days after service of this Order." The order did not address the Public Defender's availability.

V.

*Petition for Writ of Mandate*

Bemore then filed the instant petition for writ of mandate, through Sayasane and Cotterill, in this court. He asks us to direct the trial court to vacate its order appointing the Public Defender and grant his request to appoint Sayasane and Cotterill nunc pro tunc to the date they began work on his habeas petition. He asks us to order "reasonable payment" to them for services "related to the preparation and filing of the pending habeas petition."

18

He contends amendments by the RJA to sections 1473 and 1473.1, and corresponding amendment to California Rules of Court,[5] rule 4.553, create an independent process for selecting and assigning private counsel to represent petitioners in postconviction RJA habeas proceedings.[6]

In support of his petition, Bemore submitted a declaration by the deputy public defender in charge of the Public Defender's writs and appeals unit, Troy Britt. According to Britt, the trial record in the underlying case consists of a 26,482-page reporter's transcript and a 2,112-page clerk's transcript. Britt averred that "[g]iven the sheer volume of the file," it would take his office "nearly a year just to get up to speed on [Bemore's] case." This time estimate could "double" if the "equally extensive record" of Bemore's codefendant, who was tried separately, was determined to be relevant. Britt acknowledged that Sayasane represented Bemore in the California Supreme Court, and that Cotterill represented him in the United States District Court, the Ninth Circuit, and the United States Supreme Court, and that Bemore wanted "his previous counsel to continue representing him, based on a longstanding relationship built on trust and familiarity with the extensive record."

After the People filed an informal response to the petition at our request, taking no position on who should be appointed to represent Bemore, we issued an order directing the Superior Court to show cause. Additionally,

---

[5]    Further undesignated rules references are to the California Rules of Court.

[6]    In what we assume to be a typographical error, Bemore cites to rule 4.551 in a heading, but does not discuss this rule as part of his argument on this point.

we asked the parties to answer two questions:  (1) "In light of the Legislature adding subdivision (e) to Penal Code section 1473, parallel to the enactment of the Racial Justice Act at Penal Code section 745, is Penal Code section 987.2 the exclusive path to appointment of counsel on postconviction Racial Justice Act claims?"; and (2) "Assuming Penal Code section 987.2 applies, is the Office of the Public Defender 'available' for the appointment given the evidence presented that (a) there is no one qualified to handle death penalty-related habeas proceedings in their office and (b) it would take their office approximately one year to come up to speed given the volume of the record?"

The Superior Court filed a return,[7] asserting section 987.2 is the "exclusive mechanism for the appointment of counsel" in the trial court in all non-capital cases, including postconviction RJA habeas proceedings.

The order to show cause included a proposal to deem the People's informal response as the return to the order, but the Public Defender filed an objection.  The Public Defender acknowledged it was appointed pursuant to section 987.2 "as counsel for . . . . Bemore" and that he had filed a petition challenging its appointment through his prior habeas counsel.  It then asked for leave to intervene and file a return as a real party in interest.  We granted the request.  In its return, the Public Defender opposed the relief requested by Bemore.  We discuss the Public Defender's contentions in further detail later when we address whether it is disqualified from representing Bemore.

In his reply brief, Bemore confirmed his desire to have Sayasane and Cotterill appointed as habeas counsel.  In his view, their appointment is in

---

[7]     *Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 95–96 [authorizing the respondent court to appear in writ proceedings when issuance of the writ could potentially impose financial obligations on it].

his best interests based on their familiarity with the trial record, issues, and witnesses, his trust in them, and their work to date on his RJA claim. He argued their appointment would also promote judicial economy and save time and money by avoiding the duplication of work. In his words, "The Public Defender's appointment as my attorneys will only hurt me. It will not only deprive me of two highly qualified attorneys who know my case better than anyone, but will unfairly delay my pursuit of justice."

Sayasane and Cotterill provided additional details in supporting declarations about their prior representation of Bemore in his capital habeas corpus litigation. Sayasane explained she worked with lead counsel, Bryan, to prepare a petition for writ of habeas corpus that asserted 32 claims for relief. Her assistance involved working on Bemore's case for "hundreds of hours . . . involving travel to San Diego and elsewhere to talk with trial counsel, interview witnesses, meet with the prosecutor and review the discovery, consult with experts, confer with the case investigator and oversee the postconviction investigation."

Cotterill was "appointed as one of his attorneys in the . . . Southern District of California . . . and continued his representation in the Ninth Circuit Court of Appeals." After Bemore was granted partial relief by the Ninth Circuit, Cotterill filed a petition for rehearing. She drafted the brief in opposition to the Attorney General's petition for certiorari in the United States Supreme Court, and she filed a petition for certiorari on Bemore's behalf.

Sayasane and Cotterill also provided additional details about the work they had conducted to date on Bemore's RJA claims. "From July 2023 through September 2024, counsel spent approximately 325 combined hours on the case. That work . . . included (1) attorney consultation time, (2) client

communications (calls, letters, prison texts, in-person meetings), (3) preliminary investigation, including interviews with [associate] trial counsel [for the underlying trial], (4) consultations with resource attorneys . . . , (5) review of transcripts and case materials, . . . (6) legal research and writing related to the motion for appointment of counsel," and (7) preparation of Bemore's petition for writ of mandate and reply brief.

## DISCUSSION

Bemore contends the trial court erred when it determined section 987.2 governs the selection and assignment of counsel to represent petitioners in postconviction RJA claims in noncapital cases. In his view, Sayasane and Cotterill should have been appointed to represent him pursuant to new provisions in the RJA that he argues govern the selection of counsel. Alternatively, assuming section 987.2 applies, Bemore asserts the court abused its discretion when it failed to find good cause to appoint Sayasane and Cotterill based on their extensive prior representation of him in the underlying postconviction proceedings. Finally, assuming there is good cause to appoint Sayasane and Cotterill, Bemore contends they must be selected for appointment because the Public Defender is unavailable within the meaning of section 987.2(e), for two reasons: First, it is undisputed it will take at least a year, possibly two, for any attorney at the Public Defender to be ready to prosecute his RJA claim. Second, Bemore contends the Public Defender created a conflict of interest when it took an adverse position against him in these writ proceedings. We address each of these contentions in turn.

I.

*Section 987.2 Governs Selection of Appointed Counsel in Noncapital,*
*Postconviction RJA Claims in the Superior Court*

Bemore contends amendments by the RJA to sections 1473 and 1473.1, and corresponding amendment to rule 4.553 create an independent process for selecting and assigning private counsel to represent petitioners in postconviction RJA habeas proceedings. On this first question, we agree with the Superior Court that section 987.2 contains the provisions that govern the selection of appointed counsel to pursue noncapital, postconviction RJA claims in superior court.

As important background, we begin with a discussion of the right to the appointment of counsel at public expense in California, including when that right arises in habeas proceedings.

Indigent criminal defendants are entitled by the state and federal constitutions to the appointment of counsel at public expense at all stages of the proceedings when their substantial rights may be affected. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Gideon v. Wainwright* (1963) 372 U.S. 335 [trial]; *Mempa v. Rhay* (1967) 389 U.S. 128, 134 [sentencing]; *Douglas v. California* (1963) 372 U.S. 353, 356–357 [first appeal of right].) Although there is no state or federal constitutional right to counsel to assist with a collateral attack on a criminal judgment, California confers a statutory right to counsel in postconviction proceedings under some circumstances. (*In re Barnett* (2003) 31 Cal.4th 466, 474–475.) In capital cases, for example, Government Code section 68662 requires the superior court to offer and appoint counsel to represent a state prisoner in habeas proceedings pursuant to Penal Code section 1509 "upon a finding that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide

23

whether to accept or reject that offer." (Gov. Code, § 68662, subd. (a).) In noncapital cases, rule 4.551(d), requires the superior court to appoint counsel in habeas proceedings "for any unrepresented petitioner who desires but cannot afford counsel" if it issues an order to show cause.

Bemore's right to have counsel appointed at public expense to represent him in his RJA habeas petition arose under a new statutory provision enacted by the RJA. Section 1473 codifies the main grounds and procedures for prosecuting a writ of habeas corpus in California. In 2022, the RJA amended section 1473 to add subdivision(e) to provide specific procedures for litigating RJA claims including the showing that is required to have counsel appointed at public expense. (*Wilson, supra,* 16 Cal.5th at p. 945; Assem. Bill No. 256 (2021–2022 Reg. Sess.); Stats. 2022, ch. 739, §§ 2, 3.) Before the amendment, trial courts were required to appoint counsel in habeas proceedings for indigent, unrepresented petitioners who desired but could not afford counsel "[o]n [issuance of] an order to show cause." (Former rule 4.551(c)(2).) After the amendment, the rule remained the same for habeas proceedings that do not involve RJA claims. (Rule 4.551(d)(1).) But for those that do involve RJA claims, courts must now appoint counsel "if the petitioner cannot afford counsel and either the petition alleges facts that would establish a violation of [the RJA] or the State Public Defender requests counsel be appointed."[8] (§ 1473(e); rule 4.551(d)(2).)

---

[8] In its return, the Public Defender requests that we address whether petitioners are entitled to counsel in RJA habeas proceedings based on whether allegations of a violation of section 745 are properly pled, or whether the petition must first establish a prima facie showing for the issuance of an order to show cause. The Public Defender argues it is the former standard that applies. We acknowledge this is currently a matter of dispute. (See *In re Mendoza* (Dec. 18, 2024, S287251) [2024 Cal.LEXIS 7082] (dis. stmt. of

Section 1473(e) is clear, and all parties agree that it requires the trial court to appoint counsel to represent Bemore in postconviction RJA habeas proceedings in accordance with the authority cited above. Where they disagree is on the question of the precise mechanism and procedures that must be followed to select and assign particular counsel for that appointment.

In cases in which a litigant is entitled to court-appointed counsel, such as this one, indigent criminal litigants do not have a right to the appointment of a particular attorney to represent them. (*Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 933–934.) It is the court's duty to choose appropriate counsel for court appointment in the exercise of its sound discretion. (*Harris, supra,* 19 Cal.3d at p. 795.) In California, a patchwork assortment of statutes and rules governs the exercise of this discretion. The applicable statutes and rules differ depending on the type of case, the court making the appointment, and the stage of proceedings.

Section 1240, for example, governs the selection of counsel to represent indigent criminal defendants in death penalty-related appeals and related proceedings where the State Public Defender is authorized to provide representation. Rule 8.300 provides for the appointment of counsel from a panel to represent "indigents not represented by the State Public Defender" in other criminal appeals. And rule 4.561 establishes a "mechanism for superior courts to appoint qualified counsel to represent indigent persons in death penalty-related habeas corpus proceedings."

Liu, J.).) But this dispute is not before us today as Bemore did not raise it in his petition. Nor does it appear to be an issue in Bemore's case because, in our view, the trial court did apply the pleading standard urged by the Public Defender. We therefore decline the Public Defender's repeated invitation to resolve this question.

Relevant here, section 987.2 applies to proceedings in the superior court in which counsel is assigned to represent an indigent criminal defendant. (§ 987.2, subd. (a).) This includes the arraignment, preliminary hearing, and trial in both capital and noncapital cases. (See §§ 987, 987.05, 987.1.) It includes contempt proceedings. (*County of Santa Clara v. Superior Court* (1992) 2 Cal.App.4th 1686, 1696.) It includes proceedings in juvenile court in counties in which there is a public defender. (*In re J.G.L.* (1974) 43 Cal.App.3d 447, 452.) And it includes the selection and assignment of counsel to represent a habeas petitioner in postconviction habeas proceedings after the superior court issues an order to show cause. (*Charlton, supra,* 93 Cal.App.3d at pp. 862–863.)

After a thorough review of relevant authority, we agree with the Superior Court that section 987.2 is the *exclusive* mechanism for the selection and assignment of counsel to represent indigent litigants in superior court in non-capital habeas corpus proceedings. We conclude this includes those that raise RJA claims. There is no alternate mechanism anywhere else in the Penal Code.

Bemore however contends the provisions of section 987.2 do not apply to postconviction habeas proceedings that raise RJA claims, and the trial court was empowered to select his preferred counsel for appointment without regard to the provisions of section 987.2 that prioritize appointment of the public defender. His argument is premised on a series of amendments to the Penal Code and California Rules of Court by the RJA. He contends sections 1473(e) and 1473.1, in conjunction with rule 4.553, set forth a different mechanism for the selection and assignment of counsel to represent petitioners in postconviction RJA habeas proceedings in superior court. Read together, he contends these statutes and rules govern the selection process

26

and provide for the appointment of private counsel without regard to section 987.2. We disagree.

The provisions Bemore cites do not address the *selection and assignment* of counsel to handle court appointments. It is true section 1473(e) "contains its own counsel appointment provision." (*Wilson, supra,* 16 Cal.5th at p. 958.) But this does not mean the RJA contains its own provision for the selection and assignment of a specific attorney or organization for a particular appointment. The RJA amended section 1473 to change the *circumstances* that entitle a petitioner to have counsel appointed at public expense. (*Wilson,* at p. 945.) As explained, courts must now appoint counsel "if the petitioner cannot afford counsel and either the petition alleges facts that would establish a violation of [the RJA] or the State Public Defender requests counsel be appointed." (§ 1473(e); rule 4.551(d)(2).) But nowhere do the RJA amendments to section 1473 address the trial court's discretion to select and assign counsel.[9]

---

[9] There is one subdivision of section 1473 that addresses the selection and assignment of court-appointed counsel, but it was not enacted by the RJA and it does not apply here. Subdivision (h) of section 1473 applies to the appointment of counsel if the superior court grants a postconviction petition for writ of habeas corpus "and the prosecuting agency elects to retry the petitioner." It provides "the petitioner's postconviction counsel may be appointed as counsel or cocounsel to represent the petitioner on the retrial" if (1) "[t]he petitioner and postconviction counsel both agree for postconviction counsel to be appointed," and (2) "[p]ostconviction counsel is qualified to handle trials." (§ 1473, subd. (h).) This subdivision is inapplicable here, because it applies to representation on retrial, not habeas proceedings. But it demonstrates the Legislature would have made explicit modifications to the Penal Code if it intended a different approach with section 1473(e). (See *Wilson, supra,* 16 Cal.5th at pp. 952–953.)

27

Nor does section 1473.1 establish an RJA-specific mechanism for selecting and assigning court-appointed counsel. Section 1473.1 was added to the Penal Code in 2023. (Stats. 2023, ch. 34, § 20.) Relevant here, it requires the Judicial Council to "promulgate standards for appointment of private counsel in superior court for [RJA habeas] claims . . . by individuals who are not sentenced to death." (§ 1473.1.) The Judicial Council has done so with the enactment of rule 4.553, which "defines the minimum qualifications for appointment of counsel for a petition for writ of habeas corpus claim filed under section 1473(e) in a noncapital case in the superior court." (Rule 4.553(a).) Section 1473.1 thus addresses the *qualifications* that are required for counsel to be *eligible* to be appointed to represent individuals who bring postconviction RJA claims; it does not address the selection and assignment of counsel. To the contrary, it specifically provides that "[a]n attorney is not entitled to appointment simply because the attorney meets the minimum requirements." (Rule 4.553(a).)

We are not persuaded differently by the declaration Bemore has obtained from Natasha Minsker, an RJA proponent who helped draft the legislation. Her opinion is not admissible evidence of Legislative intent. "We have frequently stated . . . that the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.) This is because "as a general rule in order to be cognizable, legislative history must shed light on the collegial view of the Legislature *as a whole*." (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.) "Unless an individual legislator's opinions regarding the purpose or meaning of the legislation were expressed in testimony or argument to either a house of the Legislature or one of its committees, there

28

is no assurance that the rest of the Legislature even knew of, much less shared, those views." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161–1162, fn. 3.)  If the views of particular legislators are not admissible for the purpose of ascertaining the intent of the Legislature as a whole, then opinions that were expressed to legislators by others in the attempt to influence those views, such as Minsker's, must also be disregarded.  (*Ibid.*)

Minsker's view that "[t]he intent of the [RJA] was not to appoint the Public Defender in place of counsel who already know the case and client well" is also not tied to a provision of the RJA that addresses the selection and assignment of counsel for court appointment.  As we have explained, there is none we can find other than section 987.2.  If the Legislature envisions a different mechanism for choosing counsel to handle RJA appointments in superior court, the mechanism needs to be specified somewhere so courts can follow it when exercising their discretion.  (See fn. 9, *ante*.)  Here, we find persuasive the Superior Court's representation that the Legislature did not establish a source of funds—by statute or otherwise—for compensating RJA habeas counsel outside the normal course of payment from the general fund of the county where the appointment takes place as directed by section 987.2.

Finally, Bemore contends the California Supreme Court's recent decision in *Wilson, supra,* 16 Cal.5th 874, interprets the amendments to section 1473(e) in a way that demonstrates the Legislature intended for private counsel to be selected and assigned to represent indigent litigants in retroactive noncapital RJA cases without regard to the provisions of section 987.2.  We do not read *Wilson* this way.

*Wilson* addressed a provision in section 745 that allows defendants whose cases are on appeal to " 'move to stay the appeal and request remand

29

to the superior court to file a motion' " raising RJA claims.  (*Wilson, supra,* 16 Cal.5th at pp. 947–948.)  As part of its analysis, the Court discussed various procedures for initiating RJA claims *in capital cases* including the "process for appointment of counsel."  (*Id.* at p. 957.)  Different statutes govern the right to the appointment of counsel at public expense in death penalty cases as compared to noncapital cases.  (Compare Pen. Code, § 1509 and Gov. Code, § 68662 with Pen. Code, § 1473.)  The rules for selecting and assigning counsel to represent petitioners in such proceedings are also governed by different statutes and rules as well.  (Compare rule 4.561 with Pen. Code, § 987.2.)

In contrast to noncapital cases, an indigent person sentenced to death is *automatically* entitled by section 1509 to have counsel appointed by the superior court after sentencing to investigate and present, if viable, a "comprehensive collateral attack on [the] death judgment."  (*Wilson, supra,* 16 Cal.5th at p. 957.)  The *Wilson* court held the RJA authorizes defendants in capital cases to raise RJA claims not only through this same automatic procedure, but also by filing a "limited-purpose petition addressing only RJA claims," and to have separate counsel appointed to assist with the proceedings.  (*Id.* at pp. 944, 958.)  The Court explained that, with the enactment of section 1473(e), the Legislature contemplated a procedure for the appointment of counsel to raise RJA habeas claims in capital cases that is "distinct" from the automatic right to have counsel appointed to mount a comprehensive collateral attack on the judgment.  (*Id.* at p. 957.)  "In other words, a defendant need not necessarily await the appointment of counsel available to assist with a full capital habeas petition; the defendant may file a post-judgment RJA petition with the assistance of counsel appointed pursuant to section 1473(e) for that specific, limited purpose."  (*Id.* at p. 958.)

30

In reaching its holding, the Court expressly declined to weigh in on whether the same qualification requirements and procedures for selecting and assigning counsel apply to both full-scope habeas counsel appointed to pursue a comprehensive collateral attack and limited-scope RJA habeas counsel appointed to pursue a limited-purpose petition. (*Wilson, supra,* 16 Cal.5th at pp. 960–961, fns. 21 & 22.) The Court determined the mechanism for selecting and assigning counsel to pursue RJA habeas claims was not at issue, because the Office of the State Public Defender had already agreed to represent Wilson, if needed, in limited-purpose RJA habeas proceedings. (*Id.* at p. 959.) On the record before it, the Court specifically observed "it is not clear that the same qualification and appointment requirements apply to RJA habeas counsel as have been implemented for comprehensive capital habeas representation governed by section 1509." (*Id.* at p. 960, fn. 21.) The Court in *Wilson* thus left open the question of how RJA habeas counsel is to be selected for court appointment in capital cases and did not address this question at all in the context of noncapital cases.

As explained, the RJA contains no provisions that alter the clear, long-standing mechanism for appointing postconviction counsel to represent noncapital defendants in habeas proceedings in the superior court. (*Charlton, supra,* 93 Cal.App.3d at pp. 860–863.) The Legislature is presumed to be aware of statutory authority and case law interpreting that authority. (*People v. Landry* (2016) 2 Cal.5th 52, 105.) Section 987.2 thus remains the exclusive mechanism for the selection and assignment of counsel to represent litigants in such proceedings in superior court. (*Charlton,* at pp. 862–863.) This includes those that raise RJA claims. We therefore agree with the Superior Court that section 987.2 governs the selection and assignment of counsel to represent Bemore in the RJA habeas proceedings.

*The Trial Court Erred in Its Order Denying Bemore's Motion To Select*

*Sayasane and Cotterill To Represent Him*

We next consider Bemore's contention the trial court abused its discretion in its order denying his motion to select Sayasane and Cotterill under section 987.2. Here we agree with Bemore.

Section 987.2 requires the superior court to give priority to the primary public defender when selecting counsel for court appointment in superior court. But appointment of the primary public defender is not required under all circumstances. As we mentioned, for counties like San Diego that have a public defender, an alternate public defender, and a panel of contract attorneys, section 987.2(e) directs trial courts to "first utilize" the services of the public defender to provide criminal defense services for indigent defendants.[10] Then, if the public defender is "unavailable," the statute permits appointment of alternate defense counsel according to a specific order of priority: "[I]f the quality of representation provided by the second public defender is comparable to the quality of representation provided by the public defender, the court shall next utilize the services of the second public defender and then the services of the county-contracted attorneys prior to

[10] The appointment process under section 987.2 varies according to whether a county is classified as first, second, or third class, which in turn is determined by population size. (See Pen. Code, § 987.2, subd. (j); Gov. Code, §§ 28020, 28023, 28024.) Although San Diego County is currently defined by statute to be a "county of the third class" (*ibid.*), it should be categorized as a county of the second class. (See United States Census Bureau, Quick Facts, 2023 estimate, at <https://www.census.gov/quickfacts/fact/table/sandiegocountycalifornia/POP0 10220> [as of Feb. 18, 2025].) Government Code section 28020, however, has not been updated since 1971 to reflect San Diego's population growth.

assigning any other private counsel." (§ 987.2(e).)  In addition, "[i]n the interest of justice, a court may depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney after making a finding of good cause and stating the reasons therefore on the record."[11]  (*Ibid.*)

Section 987.2 thus authorizes the superior court to appoint private counsel, like Sayasane and Cotterill, upon a finding of "good cause" if the Public Defender is "unavailable."  (§ 987.2(e).)

As noted, the trial court gave two reasons for denying Bemore's request to select and assign Sayasane and Cotterill to represent him as RJA habeas counsel.  First, the court placed the burden of proof on Bemore to demonstrate the Public Defender was unavailable to take the appointment and found he failed to adduce evidence sufficient to meet that burden.  Second, the court found that, in the event the Public Defender was unavailable, Sayasane and Cotterill's prior representation of Bemore did not establish "good cause" within the meaning of section 987.2(e) to select them for appointment instead of another lawyer or entity.  Based on the record

---

[11]    In our view, based on the plain language of section 987.2(e), if the public defender is available, trial courts may *not* depart from the portion of the statute requiring the appointment of the primary public defender based on a mere showing of good cause.  (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 326 (*Williams*).)  It is an open question, nevertheless, whether private counsel with an extensive background representing a defendant can be appointed instead of an *available* public defender based on a higher showing of some kind.  (See, e.g., *People v. Daniels* (1991) 52 Cal.3d 815, 844–845 (*Daniels*).)  This is a question we do not need to reach to resolve the present controversy, because, as we explain next, the Public Defender has disqualified itself from representing Bemore.

before the trial court, we conclude the court erred when it made these two findings.

Our review is for abuse of discretion. (*People v. Horton* (1995) 11 Cal.4th 1068, 1098.) On such review, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711– 712, fns. omitted.)

First, the trial court made a mistake of law when it incorrectly placed the burden of determining whether the Public Defender was available on Bemore when this is a duty required of the court. "The duty of setting [a] case for trial and of expediting all proceedings is on the state." (*In re Bishop* (1962) 201 Cal.App.2d 604, 610.) "[I]t is the function of *the court*, in the exercise of its sound discretion, to appoint counsel for an indigent defendant." (*Harris, supra,* 19 Cal.3d at p. 795.) This duty includes assessing and monitoring the ability of appointed counsel to timely handle an appointment. (*People v. Lucev* (1986) 188 Cal.App.3d 551, 557, citing § 1050.)

The error was not harmless. Bemore has submitted more than ample evidence in these proceedings to make a threshold showing that, had the trial court made the required inquiry, it would have been within its discretion to find the Public Defender unavailable when compared to the relative ability of Sayasane and Cotterill to handle the appointment in a timely manner. When assessing availability, courts appropriately consider the relative ability of proposed counsel to prepare for a proceeding. (See *People v. Mungia* (2008) 44 Cal.4th 1101, 1125–1126 (*Mungia*).) To be available to represent a petitioner in postconviction habeas proceedings means to be ready to comply with the time provisions prescribed by rule 4.551. (Cf. *Williams, supra,* 46

34

Cal.App.4th at pp. 329–331 [holding that to be available to represent a defendant at trial means being ready to proceed within the prescribed statutory time provisions as required by § 987.05.]; see also § 1050 ["all proceedings in criminal cases shall be . . . heard and determined at the earliest possible time"].)  For RJA claims in particular, "the Legislature has made clear the importance of ensuring ' "efficient and effective" ' access to these remedies." (*Wilson, supra,* 16 Cal.5th at p. 954.)  Based on the declaration of Deputy Public Defender Britt, it is essentially undisputed Sayasane and Cotterill would have a head start of *more than a year and possibly two years* over any attorney at the Public Defender in terms of preparing a successive petition for Bemore in a reasonably timely manner.

Second, the record lacks substantial evidence to support the trial court's determination there was insufficient evidence of good cause to appoint Sayasane or Cotterill over alternate defense counsel under *any* circumstances, including if the Public Defender was unavailable.  This is the rare and extraordinary case where Bemore's motion overwhelmingly established an uncontradicted showing of good cause to appoint Sayasane or Cotterill based on "objective considerations" of the kind identified by our high court in *Harris, supra,* 19 Cal.3d at page 793.  Subjective considerations supported their appointment, too.

In *Harris,* our high court overturned the superior court's refusal to appoint private counsel requested by two codefendants after the public defender had declared a conflict.  The defendants were alleged to be members of an extensive criminal conspiracy. (*Harris, supra,* 19 Cal.3d at p. 793.)  Critically, the attorneys they requested for appointment had defended them in related prosecutions arising from the same conspiracy.  The attorneys therefore had an extensive background in the legal and factual issues that

were likely to be at issue in the new prosecution. (*Ibid.*) By contrast, the attorneys selected by the superior court needed "to spend a substantial number of hours in order to bring their familiarity with the background and legal issues to the level then already attained" by the defendants' preferred attorneys. (*Id.* at p. 794.) Those attorneys also believed it was in the best interest for the defendant to be represented by his preferred counsel. (*Ibid.*) On these objective facts, the Court found the trial court's refusal to appoint the attorneys requested by the defendants to be an abuse of discretion. (*Id.* at p. 799.)

The *Harris* court stated its holding as follows: "[W]hile . . . the [trial] court's discretion in the appointment of counsel is not to be limited or constrained by a defendant's bare statement of personal preference, we hold that when that statement of preference, timely made, is supported by objective considerations of the consequence here involved, and where there are no countervailing considerations of comparable weight, it is an abuse of sound judicial discretion to deny the defendant's request to appoint the counsel of his preference." (*Harris, supra,* 19 Cal.3d at p. 799.) Objective factors have been determined to include "previous representation of defendant by the requested attorney in the underlying or in any other proceeding, any extended relationship between defendant and the requested attorney, the familiarity of the requested attorney with the issues and witnesses in the case, the duplication of time and expense to the county of appointing an attorney other than the requested attorney, and the timeliness of the request." (*Alexander v. Superior Court* (1994) 22 Cal.App.4th 901, 916.) "[S]ubjective factors should [also] be taken into account by the trial court in exercising its discretion." (*Id.* at pp. 915–916.) These include a

"defendant['s] long relationship" of trust and "confidence" with preferred counsel.  (*Daniels, supra,* 52 Cal.3d at p. 844.)

Here, in finding a lack of good cause to appoint Sayasane or Cotterill, the trial court erroneously considered only the "pro bono work" counsel undertook to prepare the motion for appointment (treated as a habeas petition), stating "the fact counsel has *willingly entrenched themselves* in this case does not strike this court as good cause."  (Italics added.)  The court's finding did not take into consideration the entirety of Sayasane and Cotterill's prior representation of Bemore—a collective 18 years—in the previous state and federal habeas proceedings.  The record before the court was unequivocal that Sayasane and Cotterill did much more than assist Bemore on a pro bono basis with preliminary work on his RJA claim.  They worked for years for *court-appointed* counsel, Bryan, on a successful habeas petition that reversed Bemore's death sentence.  Cotterill, in fact, was *personally appointed* to represent Bemore as associate habeas counsel in federal court.

The work Sayasane and Cotterill propose to undertake now, moreover, is to prepare a second habeas petition, a successive one, as is allowed under the RJA.  (§ 1473(e).)  Manifestly, many issues and arguments in the first petition will necessarily overlap or even be identical with the second.  This is especially true as to potential cumulative error involving claims made in Bemore's first petition.  With their extensive and detailed knowledge of the record, Sayasane and Cotterill will also necessarily have an enormous advantage assessing and analyzing the ways the alleged RJA violation may have caused prejudicial error.

Based on the record before the trial court at the time of the underlying motion, we see no principled basis to distinguish Sayasane and Cotterill from

37

counsel in *Harris*.  Our conclusion is reinforced when we "add to the balance" the subjective factors of Bemore's strong "personal preference" for Sayasane and Cotterill "based upon trust and confidence developed over a substantial period of time." (*Harris*, *supra*, 19 Cal.3d at p. 799.)  Rather than becoming "entrenched" in the matter, the record demonstrates Sayasane and Cotterill have shown extraordinary loyalty to their client, including the recent devotion of many hours to the underlying RJA habeas petition without any guarantee of payment.  The court accordingly erred when it found the showing by Bemore did not establish good cause.  (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 ["A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence."].)

In this highly unusual case, objective considerations supporting the appointment of Sayasane and Cotterill should have triggered a hearing by the trial court as to whether the Public Defender was unavailable in relative terms when compared to Sayasane and Cotterill.  (See *Mungia, supra,* 44 Cal.4th at pp. 1125–1126; cf. *People v. Chavez* (1980) 26 Cal.3d 334, 347–348.)  Our holding does not require trial courts to conduct a hearing to select counsel in all habeas proceedings where the right to counsel has been established.  As we have explained, the evidence of Sayasane and Cotterill's prior representation of Bemore overwhelmingly established a showing of good cause to appoint one, or both of them, to represent Bemore if the Public Defender was unavailable.  In most postconviction cases, by contrast, it will be readily apparent from a request for appointment of counsel that a hearing on the public defender's availability is unwarranted.  But that was not the case here.

## III.

### *The Public Defender Is Unavailable Because It Is Disqualified by a Conflict of Interest*

Here we would ordinarily remand with directions to the trial court to conduct a hearing to determine whether the Public Defender is available to represent Bemore in light of the expected delay in familiarizing itself with Bemore's case and Sayasane and Cotterill's relative ability to timely file a petition for writ of habeas corpus on his behalf. But on the record before us, a hearing on this question is unnecessary. The Public Defender is disqualified from representing Bemore on remand, because it intervened in these proceedings in a manner incompatible with an attorney's duty of loyalty. The resulting conflict of interest renders it unavailable to represent Bemore in further proceedings. (§ 987.2(e).)

We begin with additional, relevant background. According to declarations submitted by Sayasane and Cotterill in these proceedings, the Public Defender initially supported Bemore's motion to appoint them as counsel. On May 6, 2024, Deputy Public Defender Sadaf Hane sent an email notifying Sayasane and Cotterill "she was handling all RJA post-convictions claims out of San Diego County for the . . . Public Defender. [She] conveyed that her first day in that role was May 3[ ] and she was writing to confirm . . . Bemore's request that [Sayasane and Cotterill] be appointed as his counsel in his RJA litigation." That same day, she sent another email in which she "indicated that the judge should not have any issues with [their] appointment."

It was approximately one month later that the trial court issued the order appointing the Public Defender instead of Sayasane and Cotterill. At that time, Britt and Hane allegedly continued to cooperate with Sayasane

39

and Cotterill and support their appointment. To that end, they all "strategized" together about how to reverse the order during at least two meetings. Britt, in particular, repeatedly agreed Sayasane and Cotterill should represent Bemore. He helped them "brainstorm issues" to be addressed in Bemore's petition for writ of mandate and he signed a declaration "in support of [their] appointment," which they attached to the petition. Britt's declaration represented there was no one in his office with expertise handling habeas proceedings in death penalty cases. And he estimated it would take an attorney at the Public Defender nearly a year to "get up to speed on the case," and that time could double if the codefendant's record needed to be reviewed. Based on these communications, Sayasane and Cotterill "had the impression that the [Public Defender] was not interested in litigating . . . Bemore's case due [to] their office being overwhelmed with RJA cases," and "supported [their] litigation efforts and representation of . . . Bemore."

A few months later, after we issued our order to show cause, the Public Defender reversed course. Britt sent an email to Sayasane and Cotterill stating he was "no longer sure" he could take the position the Public Defender was not "qualified to take the case." A few days after that, the Public Defender objected to our proposed order deeming the informal response filed by the People (in which the People had taken no position as to who should represent Bemore) as the return to the order to show cause and asked for leave to intervene as a real party in interest.

Confounded by the turn of events, Sayasane sent an email to Britt asking him why the Public Defender objected. According to Sayasane, Britt replied: " 'Yes, I am sorry. There is a concern that we need to object and file a Return based on the court's questions about . . . [section] 987.2.' " Britt

40

informed her that the " 'position of the office' " was the Public Defender should represent Bemore.

The Public Defender subsequently intervened in these proceedings and filed a return *arguing against* the appointment of Sayasane and Cotterill. Notably, a different deputy public defender, Jeremy Thornton, appeared and signed the return on behalf of the Public Defender as real party in interest. He averred in a declaration he had been assigned by the Public Defender to represent Bemore on his RJA claim. Yet, at the very same time, he argued on behalf of his employer that Bemore's petition for writ of mandate should be denied.

The Public Defender asserted Thornton was qualified under rule 4.553 to be appointed counsel to represent petitioners with RJA habeas claims in noncapital cases, he would represent Bemore zealously, and he would not "cause any unnecessary expenditures of funds or resources during the course of [his] representation." In its return, the Public Defender argued the trial court was obligated under section 987.2 to appoint the Public Defender to represent Bemore "unless, due to conflict or good cause, the . . . Public Defender is unavailable," and the court had no discretion to appoint Sayasane and Cotterill, as requested by Bemore, because Thornton was available and had been assigned.

In his reply, Bemore asserts the Public Defender now has a conflict of interest. He contends "the Public Defender's reversal [of position] suggests that it is placing its own institutional interest in appointments under section 987.2 generally over its duty to . . . Bemore," and that "[b]y definition, that is a conflict of interest." He asserts "the action of the Public Defender seems to be guided by concerns about the institution's operations, rather tha[n] what is in the client's best interest," and that the year's delay it will take the

41

Public Defender to get up to speed "will actively harm . . . Bemore by delaying his case in a way that is fundamentally inconsistent with counsel's duty to be a zealous advocate."

In a supporting reply declaration, Bemore reiterated his desire to have Sayasane and Cotterill represent him instead of the Public Defender. He averred: "I understand that the Public Defender now wants to represent me. I strongly object and pray that the Court will not allow this to happen"; "[t]he Public Defender's appointment as my attorneys will only hurt me. It will not only deprive me of two highly qualified attorneys who know my case better than anyone, but will unfairly delay my pursuit of justice"; "I ask that my case not be delayed a year or more so that new attorneys (whether that be the Primary Public Defender or its other defender offices), who I do not know nor trust, can come on board."

We granted leave to the American Civil Liberties Union (ACLU) to file an amicus brief. Among other recommended considerations, the ACLU echoed Bemore's concerns that the Public Defender's "reversal" on the question of whether it was available to represent Bemore "seemingly reflected institutional concerns rather than any change in facts."

In its answer to the ACLU amicus brief, the Public Defender equivocated. Reversing its earlier argument, it appeared to contend the trial court did in fact have discretion to find its office was unavailable and to appoint Sayasane or Cotterill. The Public Defender stated: "This case presents an unusual and unique set of circumstances. Looking at the facts specific to this case, this [c]ourt must decide whether representation by the Public Defender is reasonable." Notably, however, the Public Defender did not respond to the suggestion that it has allowed its institutional concerns

42

over future appointments under section 987.2 to triumph over Bemore's best interests after we issued the OSC.

After oral argument, we issued an order directing supplemental briefing limited to the following issues: "1) [¶] Whether Thornton's representation of the Public Defender in this court has created a conflict of interest with Bemore, including but not limited to whether there has been a violation of California Rules of Professional Conduct, rule 1.7(a), or a breach of the duty of loyalty (see *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 548); [¶] 2) [¶] Whether this court can properly address whether there is a conflict of interest in the first instance in these writ proceedings; [¶] 3) [¶] If a conflict has arisen, whether the Public Defender will continue to have a conflict of interest after remand to superior court."

The Public Defender, in its supplemental brief, denies it violated its ethical obligations and created a conflict of interest, though it did not mention or discuss rule 1.7(a) of the California Rules of Professional Conduct. We reach a different conclusion.

By intervening in these proceedings and filing a formal return *on behalf of itself as a real party in interest* to actively oppose Bemore's petition, the Public Defender has placed itself in an adversarial position against Bemore in a court proceeding. By doing so, it is simultaneously representing conflicting interests—its own and its client's. (See Cal. Rules Prof. Conduct, rule 1.7(a) ["A lawyer shall not, without informed written consent from each client . . . represent a client if the representation is directly adverse to another client in the same or a separate matter."].) It is also in breach of the common law duty of loyalty. (*Santa Clara County Counsel Attys Assn v. Woodside, supra,* 7 Cal.4th at p. 548 (*Woodside*).) "It is . . . an attorney's duty

43

to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent." (*Anderson v. Eaton* (1930) 211 Cal. 113, 116.)

The conflict of interest here is stark and simple. Bemore contends Sayasane and Cotterill should represent him. The Public Defender opposes the relief Bemore requests, contending the trial court lacks good cause to appoint his requested attorneys and it should be appointed instead. "[T]he rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 (*Flatt*).) The Public Defender is accordingly disqualified from representing Bemore.

The Public Defender argues that "[s]tatutory authority and decades of precedent permit — and may even require — a court-appointed attorney to contest the appointment of alternate counsel absent a showing that the appointment will frustrate the [c]lient's right to effective representation." In its view, "[a] finding that [its] conduct creates a conflict would be a clear break with Supreme Court precedent." This is patently incorrect.

The Public Defender is misguided with respect to the question we are resolving in these writ proceedings. It has mistakenly relied on case authority that addresses the *removal* of appointed counsel for cause, not the initial selection and assignment of appointed counsel, which is the question before us. Bemore's petition for writ of mandate seeks to vacate the trial court's appointment order selecting the Public Defender instead of Sayasane and Cotterill to represent him. The petition does not assert, nor even suggest, the Public Defender should be removed for cause.

The case the Public Defender relies upon, *People v. Smith* (1993) 6 Cal.4th 684, 694, is inapt and applies to the potential discharge of defense

44

counsel at a *Marsden*[12] hearing. Our high court in *Smith* addressed the inherent and unavoidable conflict that presents "when a defendant claims after trial or guilty plea that defense counsel was ineffective, and seeks substitute counsel to pursue the claim." (*Ibid.*) The Court explained that a defense attorney at a *Marsden* hearing "is placed in an awkward position. The attorney must defend against charges from the very client he or she is supposed to be representing. The potential for conflict is obvious. . . . And the conflict is unavoidable." (*Ibid.*) For public policy reasons, and also because such conflicts are "inevitable," the Court held in *Smith* that trial courts—during *Marsden* proceedings—"must allow the defendant to express any specific complaints about the attorney and the attorney to respond accordingly." (*Ibid.*)

Here, unlike defense attorneys in *Marsden* hearings, the Public Defender was not placed in a position where it was accused by a client of impropriety under circumstances where there is no choice but to respond. A public defender's office, at the time it is first appointed, is called upon to provide information relevant to the selection process. It must declare whether it has a conflict of interest, and if not, it must provide information about its qualifications and availability to handle the representation. It is not called upon to defend itself against charges of ineffective assistance of counsel or other impropriety.

As an alternate basis for justifying its appearance in these proceedings, the Public Defender argues its appointment to represent Bemore presented no bar to providing this court "with the authority to justify [its] appointment and establish good public policy." No doubt in another case the Public

---

12     *People v. Marsden* (1970) 2 Cal.3d 118.

Defender could appropriately appear as a real party in interest to address institutional concerns with respect to an issue involving the court appointment process. But here, *the Public Defender took a position in direct conflict with Bemore's objectives.* (*Woodside, supra,* 7 Cal.4th at p. 548; Cal. Rules Prof. Conduct, rule 1.7(a).) " 'It is . . . an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.' " (*Flatt, supra,* 9 Cal.4th at p. 289.) Thornton confirmed at oral argument the Public Defender did not consult with Bemore or obtain his consent to file its return. The Public Defender here, moreover, stepped beyond discussing governing authority and addressing public policy issues involving the court appointment process. Instead of standing ready to continue with the appointment if selected over Sayasane and Cotterill, the Public Defender intervened to assert it should be appointed over Bemore's objection. This was improper.

Finally, the Public Defender contends remand is required before a conflict is declared, because "there is no factual record upon which this [c]ourt can decide whether there is a conflict." We disagree. The facts here are manifest in the record and not subject to dispute. Bemore filed his petition for writ of mandate for the stated purpose of having Sayasane and Cotterill appointed to represent him instead of the Public Defender, and the Public Defender intervened and opposed his request. No further inquiry is required. (See generally, *People v. Freeman* (2013) 220 Cal.App.4th 607.)

We have no doubt the Public Defender was sincere in its mistaken belief the issue presented here was whether it should be discharged for cause. The Public Defender is disqualified, nevertheless. " '[A]n attorney is

precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests.' " (*Flatt, supra,* 9 Cal.4th at p. 289, italics omitted.)  It does not " 'matter that the intention and motives of the attorney are honest.' " (*Ibid*.)

## DISPOSITION

Let a writ of mandate issue directing respondent Superior Court to vacate its order appointing the Public Defender to represent Bemore, and to conduct a hearing to determine which of Bemore's requested attorneys should be appointed instead.  At the hearing, the court shall determine:  (1) whether to appoint Sayasane, Cotterill, or both of them to represent Bemore, and (2) whether to compensate Sayasane and Cotterill nunc pro tunc for their work on the motion for appointment, deemed by the trial court to be a petition for writ of habeas corpus.


DO, Acting P. J.


WE CONCUR:


BUCHANAN, J.


KELETY, J.


47